We'll call the third case of the morning, number 2540508, Lambert v. Onalaska, TX. Mr. Grable. Good morning, Your Honor. May it please the Court, I'm Brandon Grable and I represent the appellant Amberleigh Lambert. This case has a single fact at its center, and that fact comes from Officer Heath's own sworn testimony. At ROA 1100, Heath admits that Lambert is the only person she has ever arrested for disregarding traffic direction at a school drop-off. At ROA 1099, she never cited anyone for it, not even a warning. At ROA 1098... What's your cause of action here? Yes, Your Honor, the main cause of action that we have here is a First Amendment retaliation because what ended up happening was two days prior to this interaction, Lambert had filed a formal complaint against Heath, Heath was aware of this complaint, and two days later, Heath took action by arresting, by stopping, seizing first my client and then arresting her when she has never done this to anyone else before. But your client was going down the wrong road to enter the school, right? Your Honor, the issue with that is more nuanced than saying she was going down the wrong road. There was a traffic circle that you had to go through and then at certain times you had to turn around. My client contests that she was in that traffic to go, but by the time Officer Heath had allowed her to go... Let me see if I understand the situation right because I live right across the street from a school which has its own traffic rules. Yes, Your Honor. And I'm inferring, but I could be wrong, that the school directed the kids, the parents, to drive one way to drop them off at the back of the school so they could immediately scamper into their classes if they were on time. But if they were going to be tardy, they had to go to the front of the school and report to whoever was taking attendance so they'd be marked tardy. Is that basically what the reasoning was? Yes, Your Honor. And I will say that... And apparently Ms. Heath had a record of dropping her kids off tardy. Lambert. Lambert, excuse me. I want to clarify a couple of things. She was in line at this particular day, right on time, but Officer Heath had discretion who she was going to let go. And actually on that particular day in question, she let another vehicle go, but then she stopped Lambert. But I want to direct your attention to what the critical issue is here. We think that this case provides strong... You don't need to create any new doctrine. You're simply applying the Supreme Court precedent from the Avis v. Bartlett, the way it was interpreted in Gonzales v. Trevino, to where if you apply that exception under the First Amendment, you don't have to evaluate probable cause whatsoever. So what we have to do here, specific to the First Amendment claim, is we have to show, is there objective evidence in the record to say that there was selective enforcement? And what we have here, as mentioned, at ROA 1099, Officer Heath admits that she never cited anyone. And she also testified, too, at ROA 463, that, yeah, people disregarded this traffic circle often. It wasn't a rare occurrence. And this late, Ms. Lambert kept driving forward after she told her to stop. So if you were under tolling by crediting Lambert's testimony, what Lambert's position was was she saw some kind of hand signal. She didn't know if it meant stop. She didn't know if it meant come here. At one point, she stopped. She didn't know because there were no verbal instructions, no verbal commands whatsoever. And so when she saw that, so Lambert's position is Heath wanted to speak with her. So that's when she approached forward. But at that point, there was some kind of incident, a dispute about who hit what first. But what is clear from the testimony that we have in the record as well is that he, Officer Heath, never had any, there was no injury or anything. And she talks about this specifically at ROA 580 to 591 is her testimony about that specific interaction at the criminal trial. So I think the admissions alone from Officer Heath satisfies the Nieves standard because the court clarified in Gonzales v. Trevino that you just have to have objective evidence of selective enforcement. So you don't need to, before the Gonzales case, how this court was specifically applying the Nieves standard was saying, well, you need to have specific comparator evidence. And what the Supreme Court said in Gonzales v. Trevino was in their own words that the exception is not so narrow as to be virtually impossible to satisfy. The only standard is, is there objective evidence in the record? And we think, again, just by looking at Officer Heath's own sworn admissions, we have that objective evidence. We have an officer who, she's not a school resource officer. She is the school resource officer. She is out there every single morning. She has had these interactions with different parents for years and years and years, every single day, different drop-offs. And not once has she ever warned, cited, ticketed, arrested any other parent who did what Lambert did. The only difference for Lambert that particular day was it happened to be within 48 hours of Officer Heath learning that Lambert had filed a formal complaint against her. What was her explanation for why she was on the running board? So the explanation for the running board, that's a great question, Your Honor. If I understand what was happening based on what Lambert's testimony was, and I have that for you as well, where she's describing, I believe that's at R08-1097, where they're describing the interaction. Lambert had, once he, Officer Heath, had hit the vehicle with her hand, Lambert had stopped her vehicle. Her window was down, and without any verbal commands or anything to get out, Officer Lambert, I assume, sorry, Officer Heath, probably ticked off, I don't know, about the whole interaction. Jumped up on the running board and then proceeded to try to drag Miss Lambert out of the vehicle, which then caused, of course, her foot to come off the brake and the vehicle to roll forward. So the car was moving forward when she jumped up on the running board, or the car had stopped? My understanding, Your Honor, is that the car had stopped. So there were different hand signals, there were stop and goes, and then at some point, Officer Heath jumps up on the vehicle. And, again, my position is the greatest thing about the First Amendment aspect, about this Gonzales exception, is you don't need to address these disputed areas, right? Because if you say that the exception applies, according to Supreme Court precedent, it's simply a reversal to say evaluate this without applying probable cause. So she was arrested for aggravated assault, and the charges were dismissed, right? Yes, Your Honor. So what, I mean, why is this a claim? So, yes, Your Honor, so this is where the Salceda v. San Benito case comes into play. So the original seizure, the original stop was for disregarding a traffic circle, something she's never arrested. So Salceda requires the court to parse out temporally whether or not seizures are lawful or unlawful. So essentially, if the, so prime example, if someone is saying that they are being unlawfully arrested, but then they resist the arrest, well, the resisting arrest then creates probable cause to legitimize the arrest. Well, under Salceda, what the standard is, is, well, okay, we're not looking at the point they resisted. You have to look at what was the point of the initial arrest. That's a claim. And so what we have here is, again, if the court wants to go down the probable cause hole here, and you look at the disregarding, there's just no probable cause for it. It's not even a violation of the law. But, again, there's subjective evidence. And then if you were to look at the aggravated assault piece, which is a felony that requires serious bodily injury, and Officer Heath testified specifically, again, if you look at the record, ROA 580 to 591, Officer Heath admits at the criminal trial under oath, which I asked her about again in deposition, that she did not have any serious bodily injury. She continued working that day. She went on with her business. And so what we have here is. Well, that, I mean, of course she didn't. But the point is, you can still be arrested for attempted aggravated whatever, if the car was driving toward her or moving along, and she could have fallen off the floorboard and really been injured. But I thought I asked you at the beginning what was the claim. And you said first amendment retaliation. But you're also saying no grounds for the arrest, right? Yes, Your Honor. So you've got two claims. Yes, Your Honor. And the reason I'm right, sorry. So I went down the first amendment issue because I want to provide this court with the cleanest path to reversal. And that's by simply saying there's objective evidence. We're not even going to look at probable cause because I think we get the same relief. My client gets the same relief under a retaliation claim because then there's no questions as to probable cause. But if you were to look at the probable cause issue, my client's position, right? Applying the toll and standard. She never intended to disobey or attack or do anything to Officer Heath. This was solely a result of when she was stopped and Officer Heath got up on that running board. She dragged my client through that window, which caused my client, of course, to have her foot come off the brake. And so what happened after that, I mean, you're attacking somebody out of a vehicle. There were no, again, no verbal commands whatsoever. And also my client would not have done that. You have to, when applying from her perspective, she had her kids in that vehicle. Yeah, I would have put it in park if I had my kids in the vehicle. Well, Your Honor, the issue there is she was never told that she was being arrested, that she was being seized. She didn't have to be told anything. When the cop gets up on your running board, you slam it into park because you just knew. Let me clarify, Your Honor. Ms. Lambert actually did try to do that. She did try. She could not reach the stick to shift it. And the shifter actually broke during that interaction as well. That was another piece to this. So the whole interaction happened rather quickly. My client did not understand. There were no instructions. There were just weird hand signals, and she thought maybe she was going to be questioned about the complaint she filed or whatever. Because you have to understand, from my client's perspective, from Lambert's perspective, she had just pulled up to that circle, and the car in front of her was permitted to go. They had a history, didn't they? They did have a history. Which I think goes to the objective evidence in the record, because this comes down to a simple proposition, Your Honor. The simple proposition is this. You have an officer who has never arrested, cited, or warned another parent before, and the only one she decided to elevate that was the one person who filed a complaint against her. And so we think you can't get any more objective. When you're talking about the Gonzales v. Trevino standard, we're not talking about objective evidence that's in the margins of the exception. We're talking about it's right in the center. You have an officer making sworn statements saying, I have only treated Lambert differently, and I was aware that she filed a complaint against me. You can't get any clearer than that from the school's main resource officer. So based on that, we would like, obviously, for the court, if they want to go through the probable cause analysis to see, hey, look, are we going to challenge what the trial court did? But I think, again, you get to the same relief. And by simply applying the First Amendment, Nevis standard, where you evaluate this without looking at probable cause, and you say, is there objective evidence to say that what happened on April 1st, 2021, was substantially motivated as a result of my client filing a complaint? And you don't have to do any weaving. You don't have to expand any kind of doctrine. I mean, I would gladly sit up here today and say, get rid of qualified immunity. But we don't have to go anywhere near that. So we could simply say, the Supreme Court has told us to look for objective evidence under Gonzales v. Trivino. And if there is objective evidence, then probable cause is out. And then, of course, we did, obviously, in relation to that, we did assert, we did challenge Fourth Amendment unlawful seizure. Essentially, the manner, we were attacking the manner of the seizure, saying that without any verbal orders, without any proper escalation, you immediately proceed to dragging someone out of a vehicle. We obviously have concerns with that. But what I'm sitting here in front of you today is the easiest path forward is First Amendment retaliation, objective evidence. And so let's have this case presented in front of a jury on that First Amendment retaliation issue rather than summary judgment. I'm looking back at the district court's opinion, and he parses what the magistrate judge said. And he says, quoting the magistrate judge, there is no evidence that other parents or guardians did not also file complaints against Officer Heath. Is that correct or not correct? Your Honor, I think the, so essentially what the court, I think the court was going outside the Gonzales v. Trivino standard. But is that true or not true? Well, we can't prove a negative. We don't have any evidence. Well, didn't you ask Officer Heath on deposition? Your Honor, we asked if she was aware of any complaints. I believe we did. And there's no evidence. We asked for any other complaints in discovery. We didn't get any. And I want to be clear, too, our concern with that position is I think it inverses the Gonzales v. Trivino standard. Because essentially the plaintiff's burden is not to prove a negative about unknown individuals. The burden is to present objective evidence about selective enforcement. Well, I think, I don't, I'm not sure that that requires, clearly doesn't require a plaintiff to go back through all of the complaint records in the world. But at least someone had to ask Officer Heath, are you aware of any other complaints being filed against you by parents? We asked for any and all complaints and we did not get any. So what you're saying is the magistrate judge was wrong. The magistrate judge, yes, we, and we objected to that. Our concern is, our biggest concern about all of this is we think there's objective evidence that a jury should decide whether or not the conduct that happened that day was substantially motivated as a result of the complaint. Because the objective evidence says Jews treated differently. So you're looking, you're looking for the exception. And the exception requires you to show that other people were not arrested or detained or whatever when they were engaged in the exact same conduct and may, after making complaints. I disagree with that, Your Honor. That was the Nevis v. Barlett standard, which said you need a comparator. But then that was changed and broadened under Gonzales v. Trevino by the Supreme Court, where they specifically said you don't look to comparator. You just look for objective evidence in the record. That's it. That's the standard. Well, objective evidence about a history of non-prosecution. Right. And what we do know is no one has ever been arrested, cited, warned, et cetera. And the only person that happened to was my client two days after filing a complaint. I see my time's up. OK. Thank you, Your Honor. OK. Thank you. May it please the Court. My name is Erica Neal, and I'm here on behalf of the city of Onalaska and Officer Tammy Heath. There are a couple of things that I want to clarify regarding the facts before we jump into any legal argument. At the record on 282, there is a cartoon-like diagram that shows the school drop-off route. And I believe Lambert's counsel was a little mistaken based upon the statement of Officer Heath on the direction that Ms. Lambert was traveling. To get to the school, the normal drop-off line is off of a road. I believe it's called Gantry. And you come through Gantry, and then you kind of jump to the left a little bit, and then you go on to the school. And on that day, Ms. Lambert was not on Gantry. She was not in the normal line as if she was going to be on time. She was traveling southbound on FM, I believe it's 356 South, which is never a road that the parents are supposed to use to get to the school. And so it wasn't like she was in line and Officer Heath just arbitrarily cut her off to get from the school. She was going down a prohibited lane. And so I want to start with the undisputed facts because I think that that is important. It was undisputed that Officer Heath was directing traffic that morning. Lambert did not follow Officer Heath's directions. Now, what Lambert would have you think is that, well, I just misunderstood. And I'm going to get to that in a second. But as the district court clearly noted, whatever Lambert's intent was or misunderstanding was is not relevant to the question of probable cause. And so while I understand the summary judgment purview of the court and how they need to address the facts, what Lambert is asking is to have Officer Heath view the facts through Lambert's lens. And that's not the probable cause standard. To determine whether there's reasonable suspicion or probable cause. Well, he is arguing that in light of the Supreme Court's more recent precedent, we don't look at probable cause. Sure. But you still, OK, if you want to address whether there was objective evidence, I can definitely move on to that. So this case doesn't fall underneath the Trevino or the Gonzalez case. And this is why. In that case, there was an I got you moment where there was, it looked like a petition that was placed in a city council member's binder. And then they charged her with tampering with a government document. That's not what we have here. Judge Jones, you clearly noted that these two individuals, Officer Heath and Lambert, they had an ongoing history. There is evidence in the record that Officer Heath had already told Lambert on occasion that she needed to use the other entrance. And Lambert had blown her off, essentially waving her on, driving past her. As Mr. Grable clearly noted, that a couple of days before this April 1 incident, what Officer Heath knew at the time was that Lambert had gone to a principal. So this complaint that he speaks of is actually with the school. It is not with the Onalaska Police Department. And on that note, I do not believe there is any evidence in the record of any complaints made to the school. And that question was not asked. And so when Miss Lambert went to Mrs. Grubbs, the assistant principal, Mrs. Grubbs told her that she had been going the wrong direction and that Officer Heath was going to continue to direct traffic and advised Miss Lambert of the correct traffic flow. That was communicated to Officer Heath. And that is actually in the record at Miss Grubbs' statement. And I can give you that site. I believe it's ROA 299 and ROA 310. And so what Officer Heath knew is that Miss Lambert was made aware of this traffic flow and then proceeded to ignore it anyway, at which time becomes a violation of the Texas Transportation Code because Officer Heath is there providing hand signals and directing traffic and Lambert is willingly ignoring them. And so that does not fall within the Trevino case where it's some arbitrary, innocuous statute or criminal penalty that has been applied and you take facts that are not typically applied to the enforcement of that statute to create some type of criminal charge. Here that's not what happened. When you have an officer directing traffic, that's no different than a stop sign or a traffic light. It's not some innocuous type of misdemeanor. It's very common sense and people driving the road tend to understand what that means when there's an officer out there directing traffic. And so for those reasons, that doesn't fall within the objective evidence. Additionally, in Trevino, there was statistical analysis of decades' worth of that one statute being applied in that county. And here we don't have that. You've cherry-picked only the one officer. And so that's not objective evidence of enforcement of that statutory provision or of that crime because it doesn't encompass the totality of what has been prosecuted in that county. And so for that, I think you go to the next hurdle, which is the probable cause standard. And here we clearly have probable cause. Again, based on what Officer Heath knew at the time, she knew that she had attempted to redirect Lambert before. She knew that Ms. Grubbs, the assistant principal, had discussed the situation and the traffic flow with Ms. Lambert. And then two days following, that Ms. Lambert was intentionally not following the traffic flow and also not following her traffic direction. And so then moving forward with the subsequent charges, I'd also like to bring to the court's attention, it was not just the injury to a police officer. It was not just the felony charge. It was also the resisting arrest charge. And in stating that, there were verbal commands given to Ms. Lambert. She actually testified during her criminal trial, it's on ROA-336, that she was told by Officer Heath that she was under arrest. And then following that, there is a statement from a justice of the peace that just happened to be there that said that she had continued to move her car while Ms. Lambert was on the running board. What about the broken steer shifter? What was the evidence about that? That was only testimony from Ms. Lambert. There was no testimony of that from Officer Heath. However, if you watch the video footage that was there, that her car actually comes to a complete stop at some point and she was arrested and taken out of the vehicle. So it didn't prohibit her car from coming to a complete stop. How did it get broken? Excuse me? How did it get broken? I don't know. It's our contention that it was not broken because the vehicle was able to come to a complete stop. So in support of the underlying arrest and subsequent charges, especially regarding the resisting arrest, the evidence that is undisputed is that she was told that she was under arrest, and that's supported by, like I said, Ms. Lambert's testimony and her criminal trial, and that she also refused to get out of the vehicle. And she did not do that until backup came, at which time then she did come out of the vehicle. When you go back and you look at Trevino and its sentiment about these sham charges, there are no sham charges when it comes to the resisting arrest charge and then the felony assault on a peace officer charge. I think the plaintiff tries to conflate this idea that because she was acquitted that we're going to apply the higher beyond reasonable doubt standard rather than just the probable cause standard. And so I just want to point that out as well, that this idea that just that Officer Lambert, or excuse me, Officer Heath testified that she has never arrested somebody like this before, there is also no evidence that you've had somebody as habitual of a violator as Ms. Lambert. She was the one that numerous times refused to go the right direction down the school drop-off line and was told numerous times not just by Officer Heath but also by the assistant principal. If you don't have any further questions, we would ask that you affirm the judgment of the trial court. All right. Thank you, ma'am. Thank you. Mr. Grable. Yes, Your Honors. So I did ask Officer Heath in deposition. She was not aware of any complaints. That said, you could start ROA 460 for that. I also asked the city rep as well about complaints against Officer Heath, and that's ROA 434 to 441, and they go through a whole bunch of testimony about how they don't track complaints, don't keep complaints, they have no records of any complaints, period. And I want to clarify something about Trevino, the Gonzalez v. Trevino case. That case is not about sham charges, right, because that goes into the probable cause analysis. What that case was about was when you have an enforcement mechanism applying selective enforcement against somebody for some reason that has a basis of First Amendment, and that's the whole basis of the Supreme Court taking that case was because the Fifth Circuit specifically was narrowly applying the Nevis-Bartlett standard by saying, hey, look, you did not have an example of a comparator of someone else who was in this exact situation. You didn't have that. The Supreme Court reversed and said, we're looking at it too narrowly. You just need objective evidence. Yes, Your Honor. So if you're – yes, but wouldn't it be correct that if your client was disobeying an officer on an FM road that that would be a traffic violation? Your Honor. And so it would put it in a different perspective from retaliating against somebody because they were necessarily in – because they made a complaint about you, but it would be – what you'd have to look at is when people are disregarding officers' instructions. Your Honor, here's my concern with that thing, okay? The first is I want to be clear that other – Officer Heath testified that other parents did this. It wasn't a nuance issue. It wasn't – Other parents – and again, if the evidence – if the evidence is that the principal had told Ms. Lambert that you can't go down this FM road, that you have to go in the other road, if she knew that and then Officer Heath is there the next two days later and she ignores it. Part of the complaint, Your Honor, part of the issue with this is because of the bad blood between these two individuals, what was happening was when Lambert is in this line to go to the school, even if it's after the time, there are other parents, other vehicles, where Officer Heath is letting them go. But then when it comes to Lambert, she is then wanting to redirect Lambert. And that was the basis of the complaint was, hey, why am I being singled out? Why am I being treated differently? Also, let me tell you about this incident involving her children at a grocery store with Officer Heath. So Officer Heath was immediately approached that day. She knew of the complaint. And the very next interaction between these two is an arrest. So if at the end of the day – here's what I would say, Your Honor. It's up for the jury to decide whether or not Officer Heath's conduct was substantially motivated by the complaint or was she enforcing the law. But I think because of the objective evidence in this record, I don't think it's appropriate for summary judgment. Because if it's not enough to have an officer who says, I've never arrested anybody, I've never gotten any complaints, but I don't have to be held accountable for it or it doesn't meet the Gonzales standard, then what does? I see I'm out of time. All right, fine. Thank you very much. We appreciate it. No, ma'am. I can't, number one, my ears are stuffy. I can't hear you, number two. No, you're not being informed. Case is over. We've heard the case. You're not helping yourself or your lawyer. Thank you very much. Court will stand in recess.